UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Houston KP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| The City of Houston, | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

**Plaintiff's Original Complaint**

Plaintiff, Houston KP, LLC, files this Original Complaint against defendant, the City of Houston.

**Introduction**

1.    Houston KP, LLC (hereinafter "HKP") is the operator of Scores Houston Gentlemen's Club, a bar and restaurant located at 6340 Westheimer, Houston, TX 77057.

2.    Scores Houston Gentlemen's Club is not a "sexually oriented business" as that term is defined within Chapter 28 of the Houston Code of Ordinances.

3.    On or about November 27, 2013, the City of Houston (the "City") entered into a Settlement Agreement ("Agreement") with sixteen similar clubs (the "Clubs") in Houston who desired to operate as sexually oriented businesses.  The Agreement went into effect January 1, 2014.

4.    The Clubs are businesses whose primary revenues come from the sale of alcoholic beverages.  Under the Agreement, the Clubs pay a portion of their liquor sales to the City as a bribe in return for immunity from the enforcement of otherwise applicable laws (namely certain provisions of Chapter 28 of the Houston Code of Ordinances dealing with sexually oriented

1

businesses). Because the Agreement constitutes the payment of money in return for receiving non-enforcement of city law against those paying the money, the Agreement constitutes a commercial bribery scheme that is unlawful under both state law (Texas Penal Code § 36.02(a)) and federal law (the Robinson-Patman Act).

5.    The Agreement results in the selective *enforcement* of city law against non-parties to the Agreement, such as HKP.  This aspect of the Agreement is anticompetitive and violates the Sherman Act as an anticompetitive restraint of trade.

6.    The Agreement, and its enforcement, violates the Constitution by denying due process and equal protection of the laws to non-parties, such as HKP, who wish to operate businesses like the Clubs (including exercising their First Amendment rights) under the same conditions as the Clubs.   In addition, the Agreement, and its enforcement, independently violates the First Amendment rights of non-parties, such as HKP, by imposing content- and viewpoint-based restrictions on speech that the City does not impose on the Clubs.

7.    Since the Agreement became effective, it has negatively impacted HKP's business.  The Clubs who are parties to the Agreement are direct competitors of HKP.  Under the Agreement, they are free to offer topless lap dances in their clubs without adhering to the "no touch" and "three foot" rules, and without paying the $5 per customer tax, as otherwise required by city law.  Because HKP must abide by city law, HKP cannot compete for customers in the same manner as the Clubs, which has caused—and will continue to cause—HKP to lose business and, ultimately, fail, further causing the loss of a substantial seven-figure investment HKP spent to rehabilitate the site on which its club is located.

8.    In addition, although the Agreement purports to preclude the Clubs from offering certain other amenities to their patrons, such as private ("VIP") rooms for dances, that aspect of the Agreement is a sham because many of the Clubs have continued to operate such rooms with

2

impunity.

9.     HKP seeks injunctive relief to stop the irreparable injury that has been ongoing since the Agreement went into effect, as well as declaratory relief that the Agreement is an illegal restraint on trade and illegal commercial bribery scheme.  HKP also seeks monetary damages, including actual and treble damages, and the cost of the suit, including attorney's fees for the City's violations of federal antitrust law.

## Parties

10.     Houston KP, LLC is a Texas Limited Liability Company with its principal place of business in Harris County, Texas.

11.     Defendant, the City of Houston, is a Texas home rule municipal corporation and may be served with process by serving the City Secretary, Anna Russell, at 900 Bagby, City Hall Annex, Houston, Texas 77002.

## Jurisdiction and Venue

12.     This court has federal question jurisdiction under 28 U.S.C. § 1331. This court has jurisdiction for the federal antitrust claims under 15 U.S.C. §§1, 15(a).  This court has jurisdiction under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to issue declaratory relief, where, as here, it otherwise has jurisdiction over a controversy.

13.     This court has original jurisdiction under 28 U.S.C. §1343(a)(3) because certain causes of action herein are brought 42 U.S. C. §1983 to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

14.     This Court is entitled to exercise supplemental jurisdiction over state law claims herein pursuant to the provisions of 28 U.S.C. §1367 (a) because all such claims "are so related

to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

15.     Venue is appropriate in this Court, as the defendant resides in this state and is found in this judicial district, and the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b).

## Factual Background

### The SOB Ordinances

16.     On January 15, 1997, the City enacted Ordinance No. 97-75 (the "Ordinance"), a 65-page ordinance "Relating to Regulation of Sexually Oriented Businesses and Employees of Sexually Oriented Businesses."

17.     Article III of the Ordinance, § 28-125, modified the zoning provisions of the Houston Code of Ordinances doubling the distancing requirement from 750 to 1,500 feet between a sexually oriented business and a residential area, school, church, park, or day-care center.

18.     Article III § 28-122 made it unlawful for any person to own, operate or conduct any business in an enterprise located within the city unless there is a permit for the enterprise and the permit is posted at or near the principal public entrance to the enterprise in such a manner that it will be conspicuous to patrons who enter the premises.

19.     Section 4 of the Ordinance enacted a new Article VIII to Chapter 28 of the Houston Code of Ordinances, entitled "Sexually Oriented Business Employees, Conduct and Operations."  This newly enacted Article regulated the conduct of employees and entertainers.

20.     Under Article VIII § 28-253, no person may act as an entertainer or manager of an enterprise without a permit.  In order to procure a permit, a person must provide the offices of the vice division with her name, address, date of birth, an identification card, a list of all criminal

charges, convictions and jail time, and two photographs. The applicant must also accede to fingerprinting and authorize the director to request the applicant's criminal history reports from the Texas Department of Public Safety and appropriate federal agencies. No entertainer or manager may receive a permit if the applicant has been convicted of, or spent time in jail for, certain enumerated misdemeanors. An entertainer must display her permit at all times while performing.

21.     Under Article VIII § 28-258, it is unlawful for (a) an entertainer to touch a customer or the clothing of a customer while performing; or (b) for an entertainer "to approach closer than three feet to any customer while engaging in entertainment."

22.     On June 26, 2012, the City enacted Houston Ordinance No. 2012-597, which amended Houston's Code of Ordinances to add new Article XI, which enacted §§ 28-321 through 28-325, imposing a tax of $5.00 on all defined "adult establishment" businesses in Houston for each "customer" who enters their premises (defined to include even those who spend no money in the establishment), and imposing quarterly reporting and payment requirements.

<u>The SOB Litigation</u>

23.     As a result of various laws enacted by the City, a string of lawsuits commenced between the City, the Clubs, and other adult-oriented businesses.

24.     The City brought suit against certain of the Clubs and other adult-oriented businesses in Cause No. 2010-19512; *The City of Houston v. A.H.D. Houston, Inc.*; in the 295th Judicial District Court of Harris County, Texas.  In this lawsuit, the City sued some of the Clubs and other adult-oriented businesses seeking a temporary injunction and declaratory relief for violations of Section 28-125.

25.     The City sued various members of the Clubs and other adult-oriented businesses in Cause No. 2010-19522; *The City of Houston v. ICE Embassy, Inc.*; in the 152nd Judicial District Court of Harris County, Texas.  Again, the City filed suit against certain Clubs and other adult-oriented businesses seeking a temporary injunction and declaratory relief for violations of § 28-125.

26.     Several of the Clubs and adult-oriented businesses brought suit, or intervened in the suit, against the City in Cause No. 2012-60353; *Hospitality Executives of Houston, Inc. v. The City of Houston*; in the 269th Judicial District Court of Harris County, Texas.  Here, the plaintiffs sought a declaration that §§ 28-321 through 28-325 of Houston's Code of Ordinances were unconstitutional.

<u>The Agreement</u>

27.     Ostensibly to settle the outstanding litigation between the City and certain adult-oriented businesses, the City and the Clubs entered into the Agreement. As part of the Agreement, the Clubs must adhere to certain polices and requirements promulgated by the City, including the payment of an annual sum to the "Human Trafficking Abatement Fund."

28.     In return, the Clubs receive, and will continue to receive, benefits and considerations that are not available to their competitors who are not parties to the Agreement, such as HKP.  Under the Agreement, the Clubs will receive the following benefits:

   a.     they may remain in the same location even if in violation of § 28-125;

   b.     they are not obliged to obtain a permit under the City of Houston Code of Ordinances § 28-122, nor are their managers and entertainers obliged to obtain a permit under § 28-253 for their labor at the clubs;

   c.     the entertainers performing in the clubs may perform topless lap dances, and both the clubs and the entertainers will not required to comply with

6

City of Houston Code of Ordinances § 28-258(a), (b); and

d.    they are not obliged to pay the fee per customer required under the City of Houston Code of Ordinances § 28-322;

29.    As mentioned above, the Agreement purports to preclude the Clubs from offering certain amenities, such as private ("VIP" or "champagne") rooms for dances.  However, this aspect of the Agreement is a sham because many of the Clubs continue to operate private rooms with impunity.

30.    All other adult-oriented businesses that are not part of the Agreement must adhere to sections of the City of Houston Code of Ordinances that the Clubs are now exempt from.  In other words, the City has one set of laws for the Clubs that were selected for the Agreement and pay for inclusion in the Agreement, and another set of laws for their competitors.

31.    The City initially claimed that the Agreement was "age restricted" in that a club could only be a party if it had been operating for a certain number of years.  The City later said it would allow newer Clubs, such as HKP, to become parties to the Agreement on the same terms as the Clubs, but ultimately did not do so.  In denying HKP's request to compete on a level playing field by becoming a party to the Agreement, the City provided no evidentiary hearing before an impartial tribunal (or any other form of procedural due process protections).

32.    After the Agreement went into effect on January 1, 2014, HKP's revenues began decreasing by approximately $1,500 per day because HKP could not compete on the same playing field as its competitors. These monetary losses have had a negative impact on HKP and have hurt its viability as a going concern. If HKP continues to be harmed in this manner, it is danger of failing and further losing the substantial $1.6 million investment that was spent rehabilitating the site on which HKP's club is located.

33. The City's purpose in creating the Human Trafficking Abatement Fund under the Agreement was to use the money raised from the Clubs to put adult businesses out of business who were not part of the Agreement, thereby leaving only the Clubs in business. Further, based on information and belief, the Clubs' motivation for entering into the Agreement was to gain a competitive advantage over adult businesses and put their competitors out of business.

34. The scheme created by the City and the Clubs constitutes an express or implied agreement to exclude other clubs from the Agreement and violates federal antitrust laws as an illegal restraint on trade and commercial bribery scheme.

## Causes of Action

### Violation of the Sherman Act, 15 U.S.C. § 1

35. HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 33 of this Complaint.

36. The Sherman Act states that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1.

37. The effect and intent of the Agreement is to substantially lessen competition between adult businesses by allowing the Clubs to gain a competitive advantage over other similarly situated businesses, with the ultimate goal of putting the Clubs' competitors, such as HKP, out of business.

38. The City has conspired with the Clubs to engage in a course of conduct in combination with a conspiracy that is unlawful and that is intended to substantially diminish, hinder, and interfere with competition. The City's purpose in creating the Human Trafficking Abatement Fund under the Agreement was to use the money raised to put other adult business (*i.e.*, those not party to the Agreement) out of business.

39.     Through the Agreement, the City has enabled the Clubs to obtain a dominant position in the market place and to obtain market power sufficient to maintain that dominant position through the use of this unlawful, contractual restraint of trade.

40.     By engaging in the unlawful activities described herein, the City has unreasonably restrained competition by precluding, through the Agreement, other adult businesses including HKP, from reaping the benefits that the City has bestowed to the Clubs in the Agreement.

41.     By engaging in the unlawful activities described herein, the City has burdened, and will continue to burden, competition by, between, and among adult businesses in interstate commerce within the United States without advancing any legitimate public purpose.

42.     By engaging in the unlawful activities described herein, and as a direct and proximate result of the City's actions, HKP's business has been irreparably harmed and damaged, and the harm is continuing in nature.

43.     HKP is entitled to recovery of reasonable attorney's fees pursuant to 15 U.S.C. § 15.

44.     As a direct and proximate result of the City's violations of the Sherman Act, as described fully herein, HKP has suffered and will continue to suffer irreparable harm to its trade and business for which monetary damages would not be curative; HKP is therefore entitled to injunctive relief, in addition to the costs of suit and reasonable attorney's fees.

45.     HKP seeks a declaration from this Court that the Agreement is anticompetitive in nature and an illegal restraint of trade under 15 U.S.C. § 1.

<u>Violation of the Robinson-Patman Act, 15 U.S.C. § 13(c)</u>

46.     HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 44 of this Complaint.

47.     The Robinson Patman Act prohibits commercial bribery in connection with sales of goods.  15 U.S.C. § 13(c).

48.     The Clubs are businesses whose primary revenues derive from the sale of alcoholic beverages.  Under the Agreement, the Clubs pay a portion of their liquor sales to the City as a bribe in return for immunity from enforcement of otherwise applicable laws (namely certain provisions of Chapter 28 of the Houston Code of Ordinances).

49.     The City, including city law enforcement officers and officials are the elected and/or appointed representatives of the people of the City of Houston, including customers of the Clubs.  These representatives act on behalf of the people when they enforce city ordinances that regulate adult-oriented clubs and/or establishments where alcoholic beverages are sold.

50.     By accepting a portion of the Clubs' revenues from alcohol sales to customers in return for not enforcing applicable city ordinances, the City, as well as its law enforcement officers and officials, are violating 15 U.S.C. § 13(c) because they are receiving money not for "services rendered in connection with the sale or purchase of goods" but for not enforcing the law.

51.     The Agreement has impacted HKP's business negatively since the Agreement became effective.  The Clubs are direct competitors of HKP.  Under the Agreement, they are free to offer topless lap dances in their clubs without adhering to the "no touch" and "three foot" rules, and without paying the $5 per customer tax, as otherwise required by city law.  Because HKP must abide by city law, it cannot compete for customers in the same manner as these competitors, which has caused and will continue to cause HKP to lose business and, ultimately, to fail, further causing the loss of a substantial seven-figure investment rehabilitating the site on which its club is located.

10

52.     The commercial bribery scheme has caused an "antitrust injury" by bestowing a competitive advantage on the Clubs who are bribing the City for selective enforcement of city law.

53.     By engaging in the unlawful activities described herein, and as a direct and proximate result of the City's actions, HKP's business has been irreparably harmed and damaged, and the harm is continuing in nature.

54.     HKP is entitled to recovery of reasonable attorney's fees pursuant to 15 U.S.C. § 15.

55.     As a direct and proximate result of the City's violations of the Robinson-Patman Act, as described fully herein, HKP has suffered and will continue to suffer irreparable harm to its trade and business for which monetary damages would not be curative; HKP is therefore entitled to injunctive relief, in addition to the costs of suit and reasonable attorney's fees.

56.     HKP seeks a declaration from this Court that the Agreement constitutes an illegal commercial bribery scheme in violation of 15 U.S.C. § 13(c).

<u>Tortious Interference with Prospective Business Relations</u>

57.     HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through **Error! Reference source not found.** of this Complaint.

58.     Under Texas Penal Code § 36.02(a), "[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another: (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter; [or] . . . (3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official . . . ."

59.     Here, the City solicited payment of funds by the Clubs to the City as consideration for the exercise of the discretion of the City's public servants for the violation of a duty imposed by law on public servants: namely, the decision to not enforce provisions of Chapter 28 of the Houston Code of Ordinances against the Clubs.

60.     HKP had ongoing and/or prospective business relationships with its past and prospective customers.

61.     The City knew of HKP's prospective business relationships with HKP's past and prospective customers, and the City intentionally interfered with these relationships.

62.     The City's actions were independently unlawful, regardless of the effect those actions had on HKP's prospective business relationships with its past and prospective customers.

63.     HKP suffered actual damages because the City's interference prevented HKP from continuing or establishing HKP's business relationship with past or prospective customers who frequented one of the Clubs instead of HKP's business.  The City's interference proximately caused injury to plaintiff, which resulted in the actual damages exceeding $1 million, including lost profits.

64.     HKP seeks unliquidated damages within the jurisdictional limits of this court.

<u>Violation of Due Process Rights</u>

65.     HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 64 of this Complaint.

66.     The Agreement, the City's enforcement of the Agreement, and the City's disallowance of HKP becoming party to the Agreement constitutes a policy or custom of the City of Houston.  This policy or custom constitutes an *ad hoc* but *de facto* licensing scheme, whereby certain entities pay to receive exemptions from Chapter 28 of the Code of Houston Ordinances that are unavailable to other similarly-situated entities.

67.     Through this licensing scheme, the City deprived HKP of its constitutional right to due process under the law in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States.

68.     This licensing scheme violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it is enforced arbitrarily and capriciously against entities like HKP and because it fails to accord them any due process protections, such as an evidentiary hearing before an impartial tribunal.

69.     There is no compelling interest, important interest, or legitimate governmental interest motivating defendants' creation of a licensing scheme that allows some businesses to pay a fee to be excused from compliance with city ordinances while denying that right to others through proceedings lacking any due process protections.  The resulting restrictions on HKP, including the absence of due process protections in connection with defendants' denial of HKP's request to be treated the same as the other Clubs, are not necessary, narrowly tailored, or rationally related to any legitimate governmental interest.

<u>Violation of First Amendment</u>

70.     HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 69 of this Complaint.

71.     The First Amendment to the Constitution of the United States guarantees the freedom of speech, the right to peaceably assemble, the right to expressive association, the right to petition the Government for a redress of grievances, and freedom from compelled speech.

72.     The Agreement, defendants' enforcement of the Agreement, and the City's disallowance of HKP becoming party to the Agreement constitutes a policy or custom of the City of Houston.

73. Through this policy or custom, defendants deprived HKP of its constitutional rights in violation of 42 U.S.C. § 1983 and the First Amendment to the Constitution of the United States.

74. In particular, by stating that Chapter 28 of the Code of Houston Ordinances (including its restrictions on expressive activity by club dancers) will be enforced against some businesses, such as HKP, but not others, such as the Clubs, the City has imposed content- and viewpoint-based speech restrictions on HKP's First Amendment rights.

75. There is no compelling interest, important interest, or even legitimate governmental interest for those restrictions on HKP's First Amendment rights, let alone where they are applied to some entities, such as HKP, but not others, such as the Clubs.

76. The restrictions on HKP's First Amendment rights are not necessary, narrowly tailored, or rationally related to any legitimate governmental interest, especially where, as there, these restrictions are applied to some entities, such as HKP, but not others, such as the Clubs.

Violation of Equal Protection Rights

77. HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 76 of this Complaint.

78. The Agreement, the City's enforcement of the Agreement, and the City's disallowance of HKP becoming party to the Agreement constitutes a policy or custom of the City of Houston. This policy or custom allows some businesses to pay a fee to be excused from compliance with city ordinances while denying that right to other, similarly situated businesses.

79. Through this policy or custom, the City deprived HKP of its constitutional right to equal protection under the law in violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the Constitution of the United States.

80.     There is no compelling interest, important interest, or even legitimate governmental interest motivating the City's creation of a scheme that allows some businesses to pay a fee to be excused from compliance with city ordinances and denies that right to other, similarly-situated entities, especially where, as here, the City's conduct has resulted in the imposition of content- and viewpoint-based restrictions on HKP's First Amendment rights, as explained above.  The resulting restrictions on HKP, including the restrictions on its First Amendment rights, are not necessary, narrowly tailored, or rationally related to any legitimate governmental interest.

81.     There is no compelling interest, important interest, or even legitimate governmental interest motivating the City's selective enforcement of the generally-applicable SOB Ordinances.  The City's selective enforcement is motivated by the animosity and ill will of certain City officials toward HKP and other similarly-situated adult-oriented businesses.  The City's selective enforcement is not necessary, narrowly tailored, or rationally related to any legitimate governmental interest.

Declaratory Relief

82.     HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 80 of this Complaint.

83.     HKP seeks declaratory judgment under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

84.     Specifically, HKP seeks declarations from the court that:

     a.     The Agreement is anticompetitive in nature and thus constitutes an illegal restraint of trade under 15 U.S.C. § 1.

     b.     the Agreement constitutes an illegal commercial bribery scheme in violation of 15 U.S.C. § 13(c) and Texas Penal Code § 36.02(a); and

15

     c.     the Agreement, its enforcement, and the denial of HKP's request to be treated the same as the Clubs violate HKP's federal constitutional First Amendment, equal protection, and due process rights.

<u>Request for Temporary Restraining Order</u>

85.     HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 83 of this Complaint.

86.     HKP's request for a temporary restraining order is authorized by Federal Rule of Civil Procedure 65(b).  This request for a temporary restraining order is made with notice to the City.

87.     HKP will suffer irreparable injury if the City's selective enforcement of its ordinances is not restrained.  Because there is no foreseeable end to the unequal treatment by the City, further injury to HKP is actual, imminent, and irreparable.

88.     HKP has no adequate remedy at law for its injuries.  Its injuries and losses are continuing. Its loss of business reputation, sales, potential sales, customers, and potential customers is not subject to easy measurement in terms of monetary damages.

89.     In particular, as a direct and proximate result of the City's selective enforcement of its own ordinances in violation of federal statutory and constitutional law, HKP has suffered and will continue to suffer irreparable harm to its trade and business for which monetary damages would not be curative.  HKP therefore is entitled to injunctive relief.

90.     The injuries and losses to HKP cannot be quantified because of the unique and irreplaceable nature of the business opportunities and rights involved.

91.     Without the issuance of a temporary restraining order, there is a very real danger that HKP will be permanently deprived of important federal rights, thus altering the status quo.

92.     On its face, the Agreement, its enforcement, and the City's refusal to allow other entities, such as HKP, to become party to the Agreement violates federal law in multiple respects.  As such, HKP is likely to win on the merits.

93.     Balancing the respective harms to the parties requires issuance of a temporary restraining order because HKP will suffer permanent injury to its business. By contrast, this Court simply would be requiring the City to enforces its own laws equally and even-handedly and continue operating under ordinances that have been in place for several years.

94.     HKP requests that the City be restrained from:

    a.     Regulating sexually oriented businesses under the provisions of the Agreement; and

    b.     Not enforcing City Ordinances against Clubs who are parties to the Agreement.

95.     HKP is willing to post a bond.

Request for Permanent Injunction

96.     HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 94 of this Complaint.

97.     HKP's requests a permanent injunction to prevent the City from:

    a.     Regulating sexually oriented businesses under the provisions of the Agreement; and

    b.     Not enforcing City Ordinances against Clubs who are parties to the Agreement.

Damages

98.     HKP re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 96 of this Complaint.

17

99.     At this time, HKP believes its total actual damages caused by the City's actionable conduct as described above exceed $1 million, including lost profits.

100.     HKP is entitled to treble actual damages sustained as result of the City's federal antitrust violations. 15 U.S.C. § 15.

## Conditions Precedent

101.     All conditions precedent to the filing of this suit has been fulfilled or waived.

## Prayer

102.     HKP asks that the City be cited to appear and answer and that, following trial, have judgment entered against it for the following:

        a.     actual and treble damages;

        b.     all available special and consequential damages;

        c.     declaratory relief;

        d.     pre-judgment and post-judgment interest;

        e.     permanent injunctive relief;

        f.     attorneys' fees and costs; and

        g.     all other relief to which HKP is entitled.

Respectfully submitted,

*/s/  Jeremy J. Gaston*
Jeremy J. Gaston
Federal Bar No. 26469
State Bar No. 24012685
2118 Smith Street
Houston, Texas 77000
Email: jgaston@hmgnc.com
Tel.: 713-658-9001
Fax: 713-658-9011

**ATTORNEY IN CHARGE FOR:**
**Plaintiff Houston KP, LLC**

OF COUNSEL

HAWASH MEADE GASTON
NEESE & CICACK LLP